CHAISON et al. v. McFADDIN et al.

(Court of Civil Appeals of Texas. Galveston. June 16, 1913. On Motion for Rehearing June 26, 1913.)

PRINCIPAL AND AGENT (§ 136*) — PERSONAL LIABILITY OF AGENT.

Where, in trespass to try title, it was undisputed that defendant M. had held no possession of the land in controversy during the time plaintiffs claimed the right to recover for rents and profits, but that the possession had been held by persons and corporations for whom M. acted as agent, etc., which persons and corporations were not parties to the suit, a judgment against M. personally for such rents and profits was properly denied.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 447–450, 476–491; Dec. Dig. § 136.*]

Error to District Court, Jefferson County; E. A. McDowell, Special Judge.

Action by Clara Chaison and others against W. P. H. McFaddin and others. From

a judgment for defendants denying plaintiffs' right to recover rents and profits for the use of certain land, they bring error. Affirmed.

See, also, 132 S. W. 524.

Presley K. Ewing, of Houston, George C. Greer and E. E. Easterling, both of Beaumont, for plaintiffs in error. F. C. Proctor, F. J. Duff, and D. Edward Greer, all of Beaumont, for defendants in error.

McMEANS, J. This is an action by Clara Chaison, as widow, and the other plaintiffs as, or in the right of, the children and heirs at law, of Jeff Chaison, deceased, against W. P. H. McFaddin, to recover the David Cunningham survey of 1,170 acres of land situated in Jefferson county, less a tract of 208 acres sold by Chaison and Hebert to W. P. H. McFaddin on February 7, 1885. The petition was filed February 2, 1901. Plaintiffs filed their first-amended petition July 19, 1901. In these petitions plaintiffs, in addition to their prayer for recovery of the land, prayed only for general damages. On January 2, 1904, the American Oil & Refining Company of Texas, a corporation, filed its intervention with the usual averments of trespass to try title against W. P. H. McFaddin, alleging that it had acquired the land, and "all of the rights of action of the original plaintiffs thereto." In this petition, in addition to the averments of the plaintiffs' petition, it was alleged that in the month of February, 1901, defendant McFaddin by violence, force, and fraud wrested the possession from the petitioner and those whose estate it holds, and ejected them therefrom, and appropriated the possession and use of, and the rents and revenues from, said premises ever since; that the reasonable rental value of or the value of the use of said premises is the sum of $6 per acre per year, of which rents and use the defendant had deprived the petitioner and those under whom it holds, and had appropriated same to his own use and benefit since February, 1901, to the damage of petitioner in the sum of $16,182 up to the date of filing the petition, and that such damage will continue at the rate of $6 per acre per year as long as defendant withholds possession of said premises from petitioner. January 11, 1909, Intervener American Oil & Refining Company, joined by its duly qualified and acting receiver, J. D. Martin, filed its first-amended petition against defendant McFaddin, setting up the same averments of trespass to try title as in the original petition and substantially the same averments for the recovery of the value of the rents and use of the land. March 6, 1912, Clara Chaison and others, the original plaintiffs, and the intervening plaintiffs, American Oil & Refining Company and its receiver, J. D. Martin, joined by the Texas Rice Land Company, a corporation, filed a third amended petition, reiterating the averments of trespass to try title against the defendant McFaddin, and alleging that the new party, Texas Rice Land Company, had acquired the lands, and all rights and rights of action for rents and damages formerly belonging to the original plaintiffs and the other intervening plaintiffs. This petition contained substantially the same averments as to rents and use and occupation. November 17, 1911, an intervention was filed by Marie Elizabeth Gleises, the widow, and John Gleises and others, the children and heirs at law of Paul Joseph Gleises, deceased, alleging their ownership of an undivided half of the Cunningham survey, with the usual allegations of trespass to try title. V. Weiss intervened, alleging that he owned a half interest in said survey, setting up the usual averments of trespass to try title, claiming his interest as derived from the widow and heirs of Joshua B. Hyde, deceased. It seems to have been admitted by all the other parties to the suit that Weiss held the superior title to the half claimed by him, and all of them withdrew their contest thereof. To the claim of the Gleises to an undivided half of the survey, the plaintiffs and intervening plaintiffs answered by plea of not guilty and by five and ten years' statute of limitations, and by cross-action of trespass to try title, setting up ownership in the cross-petitioners both by the record and by limitation. To said cross-action the Gleises replied by a plea of not guilty. This case was before this court at a former term, when it was held, in effect, that the record title of said survey was, to the extent of an undivided half interest, in V. Weiss, and that the ownership of the other undivided half depended upon whether the plaintiffs, or those holding under them, had title by five or ten years' limitation, otherwise such half was owned by the Gleises. Chaison et al. v. McFaddin et al., 132 S. W. 524. Thus the issues on the trial from which this appeal is taken were (1) whether said plaintiffs, for the benefit of Texas Rice Land Company, were entitled to the undivided half of said land claimed by the Gleises, by limitation, and (2) whether the defendant McFaddin was liable to them for rents or the value of the use and occupation and to what extent. A trial before a jury resulted in a verdict and judgment in favor of the plaintiffs, for the benefit of the Texas Rice Land Company, for said undivided half interest in the land sued for, and of this no complaint is made upon this appeal. The court, however, instructed the jury to return a verdict in favor of McFaddin on the issue of rents and damages, and on return of such verdict a judgment was duly entered in McFaddin's favor on that issue; and from this part of the judgment the plaintiffs have appealed, and assign as error the giving by the court of said peremptory instruction.

The survey in question of 1,170 acres was granted to David A. Cunningham July 23, 1835. He through his duly authorized agent sold to Joshua B. Hyde and Paul J. Gleises,

of the firm of Hyde & Gleises, on June 10, 1836. Hyde & Gleises were adjudged bankrupts in the District Court of the United States for the Eastern District of Louisiana, under petition filed July 27, 1842, and by bankruptcy proceedings the land in question, situated in Texas, was conveyed by the assignee in bankruptcy to Theophilus R. Hyde. This sale was on the first appeal held to be void on account of the land lying in a foreign territory. See 132 S. W. 524. The heirs of Theophilus R. Hyde, through their attorney in fact, by deeds dated June 10, 1882, and June 20, 1882, conveyed said survey to T. Jeff Chaison and J. N. Hebert, who composed the firm of Chaison & Hebert. Chaison & Hebert conveyed 208 acres, excepted in the petition of plaintiff, to W. P. H. McFaddin, by deed dated February 7, 1885. March 24, 1896, Hebert sold to Chaison his interest in the survey. The original plaintiffs, who are the widow and heirs of T. Jeff Chaison, deceased, by deed dated February 16, 1901, conveyed the land in controversy to the American Oil & Refining Company, a West Virginia corporation, which deed included all of said survey except said 208 acres conveyed to McFaddin February 7, 1885, and except a strip of about three acres conveyed to the Sabine & East Texas Railroad Company for its right of way. On May 27, 1901, they made a similar conveyance to the American Oil & Refining Company of Texas, a Texas corporation. By deed dated April 29, 1901, the West Virginia corporation conveyed to the Texas corporation said Cunningham survey, with the exception stated in the next two preceding deeds. J. D. Martin was, by the district court of Jefferson county, appointed receiver of the American Oil & Refining Company of Texas, and as such receiver on June 9, 1910, conveyed the survey in controversy, together with its rights of action for rents and damages to the intervening plaintiff, Texas Rice Land Company. In the fall of 1900, the heirs of Theophilus R. Hyde (including the heirs of Joshua B. Hyde) brought suit to recover the Cunningham survey, and on January 14, 1901, McFaddin paid to Mr. Thompson, the attorney of the plaintiffs in that suit, $1,300 in checks for their deed for said survey, and had his name inserted in the blank which had been left in it for the grantee. McFaddin did not know until he was informed in February, 1901, that the bankrupt sale under which Theophilus R. Hyde bought the survey was void. The grantors in the deed to McFaddin brought suit in the federal court to set it aside making all adverse claimants parties defendant, and on December 12, 1905, a decree was entered in that court canceling the sale and adjudging a half interest in said survey to the claimants under Joshua B. Hyde, viz., Katherine B. Hyde and Lawrence Hyde. These conveyed to V. Weiss such one-half interest on October 25, 1907, and this is the half interest adjudged to V. Weiss, about

which there is no controversy. After the nullity of the bankrupt sale was discovered the heirs of Paul J. Gleises, interveners herein, set up claim to an undivided half interest in the survey which their ancestor held, and on July 8, 1901, an agreed decree of partition was rendered in the district court of Jefferson county, in a suit between the Gleises and defendant McFaddin, by the terms of which McFaddin was awarded the north half of the survey and the Gleises the south half; but neither the original nor intervening plaintiffs were parties.

On January 14, 1901, McFaddin, on the next day after getting the deed through the attorney, Thompson, fenced up the entire Cunningham survey, and took actual possession of it. His purpose, as stated by him, was: "I fenced this land to take possession of it against anybody, * * * and to hold it against them. * * * I fenced the land and tried to hold it against Mr. Chaison; that is true. * * * Yes, sir, the Chaisons were out; they had been grazing their cattle there for 20 years; they did not graze them there any longer after W. P. H. McFaddin went in, not until 1909 and 1910." He further testified: "When I obtained this deed, which was eventually set aside in the federal court, under which I claim I fenced the land, or had it fenced; I fenced it under a claim of absolute right in myself, under that deed. I held it exclusively for myself and adversely to the Chaisons or anybody else at that time—when I bought it and for awhile afterwards. I didn't recognize the right of anybody to go there and share that possession with me until they could show me." He further testified: "I held possession until July (1901). Along in May, I think it was, the Gleises had a representative down there and brought suit. That was in 1901. A judgment was entered in that case. That is the judgment that has been offered in evidence. We agreed on a judgment. After that judgment was entered I never held possession; that is, the only possession I held was for McFaddin-Weiss Canal Company. Under that decree the use was surrendered to Mr. Swor, the Gleises' representative. I had a canal down there which belonged to the McFaddin-Weiss Canal Irrigation Company, a corporation at that time, and we expected to extend this canal across this land in 1902; we hadn't done it in 1901, and I rented this land for the Canal Irrigation Company to put in rice." He further testified that from the time of the lease by the Canal & Irrigation Company from the Gleises in 1901 up to the time there was a change of possession under the federal judgment in 1905, the Canal & Irrigation Company, as tenant of the Gleises, and himself under his individual claim of title by purchase from the Hyde heirs, held possession of this land—the corporation holding under the Gleises and he holding under his deed—that up to the time of the cancellation

of his deed by the federal judgment he was claiming in his own right, adversely to everybody so far as the Hyde half interest was concerned, and the Canal & Irrigation Company was asserting exclusive possession to the other half under the lease from Gleises. The uncontradicted testimony shows that it was the Hyde half interest claimed by McFaddin that was finally decreed to Weiss, and that the half interest held by the Canal & Irrigation Company under lease from the Gleises was decreed in this suit to the plaintiffs and intervening plaintiffs.

The contract of lease from the Gleises to the Canal & Irrigation Company shows that it was dated November 17, 1901, and that the Gleises' heirs rented to the Canal & Irrigation Company 440 acres for two years. When this contract expired, another contract for one year was entered into on January 5, 1904. In 1904 the Canal & Irrigation Company was sold out to McFaddin-Weiss-Kyle Land Company, a joint stock association, and this company leased the land from the Gleises for the year 1905. The undisputed testimony is that for the years 1902, 1903, 1904, and 1905 the Canal & Irrigation Company and the McFaddin-Weiss-Kyle Land Company were occupying the land claimed by the Gleises, and awarded to the plaintiffs and intervening plaintiffs in this suit, and cultivating it under written leases from the Gleises, and that any act of McFaddin in obtaining the leases or holding possession of that half of the land was done only as an officer or agent of one or the other of said companies. The uncontradicted testimony of McFaddin further shows that his companies only used half of the Cunningham survey in 1906 and 1907. Since 1907 neither McFaddin nor said companies have used more than half of the land. The land was not used by them in 1908, but the Chaisons used it for grazing their cattle in 1908, 1909, and 1910. Neither the McFaddin-Weiss Canal & Irrigation Company nor the McFaddin-Weiss-Kyle Land Company was a party to this suit.

The foregoing constitutes, we think, the substance of the material testimony on the issue of McFaddin's liability to plaintiffs for the value of the rents, use, and occupation of the land. The court's peremptory charge, complained of by plaintiffs in error in their only assignment of error, is as follows: "On the question of rents and damages, the evidence in this case shows that the defendant W. P. H. McFaddin has held no possession of the land, but that the same has been held by persons and corporations who are not parties to this suit, and I therefore instruct on said issue to find in favor of defendant, W. P. H. McFaddin." We think the giving of this charge under the facts in evidence was not error. It will be observed by what has been hereinbefore stated that one-half of the Cunningham survey was acquired by V. Weiss by title superior to that of plaintiffs in error, and hence no rents or profits could be recovered by them against any one for one-half of the land. It will further be noticed that in none of the petitions of plaintiffs was the value of the rents and profits claimed against McFaddin until the filing of the amended petition on January 2, 1904, so that the recovery of damages for use and occupation, confining the same to two years before the filing of such petition, would begin from January 2, 1902. In July, 1901, when McFaddin was claiming the entire survey under his purchase from the Hydes, a judgment was rendered in favor of the Gleises against him for a half interest in the survey, and this half interest was delivered to one Swor, the agent of the Gleises. This is the half interest recovered by the plaintiffs in error in this suit. From and including the year 1902 to and including 1905, the Gleises leased their half interest to the McFaddin-Weiss Canal & Irrigation Company, a corporation, and the McFaddin-Weiss-Kyle Land Company, a joint stock association, and any holding of this interest adverse to the plaintiffs was by the Canal & Irrigation Company and the Land Company, who were not parties to this suit, and not by McFaddin, whose only claim was under the Hyde title. In 1906 only half of the survey was used, and that was the half claimed by the Hyde heirs. The same was true in 1907; and it does not appear that for the years 1906 and 1907 McFaddin in any way prevented the plaintiffs in error from taking possession of the Gleises' land. In 1908, 1909, and 1910 plaintiffs in error put their cattle on the place, thus showing that McFaddin did not resist the taking possession by plaintiffs in error of the Gleises' land. In 1911 the Land Company leased from V. Weiss his half interest in the survey. At no time after the judgment was rendered between McFaddin and the Gleises heirs, in 1901, did the former claim the right to hold their interest in the land, except under lease from them to the companies he represented. We think, therefore, that no right to recover damages for use and occupation of the land against McFaddin individually was shown. The mere fact that he was active in procuring leases from the Gleises for his companies, and that he was in the active management and control of said companies, would not make him a joint tort-feasor with his companies and individually responsible to plaintiffs in error for the value of the use and occupation of the land.

The judgment of the court below is affirmed.

Affirmed.

### On Motion for Rehearing.

We have carefully examined plaintiffs in error's motion for a rehearing, and are of the opinion that the same should be refused, and it has been so ordered.

We are requested to find additional facts to those set out in our opinion and in deference thereto we find the following:

W. P. H. McFaddin had the management, control, and use of the land for the companies he represented whenever the companies had it, and was their active representative on the ground.

Charles J. Chaison, the active one of plaintiffs, testified that he had no notice from McFaddin, or any one else, that McFaddin had ceased at any time to exclude plaintiffs from possession of any land after he first excluded them; that he did not know of the friendly judgment of partition between McFaddin and the Gleises, that after McFaddin first excluded plaintiffs, they had been similarly excluded, so far as he knew, since then down to the trial, and that in January, 1901, shortly after McFaddin fenced the land, witness made demand of him for possession.

McFaddin testified that Judge A. T. Watts told him that he, Watts, and his partner, Chester, owned two-fifths of the Gleises interest.

By deed dated July 3, 1903, filed for record July 14, 1903, and duly recorded in the deed records of Jefferson county, A. T. Watts conveyed to McFaddin a two-fifths interest in the half of the Cunningham survey claimed by the Gleises, reciting a consideration of $2,100. McFaddin testified that he took this deed, with the understanding that the title had to be perfected before he paid the purchase price, and that in the meantime he paid rent as shown. The evidence shows that as the title was never perfected the consideration was never paid, and that this deed never became operative.

During all the time the land was occupied, as shown in our opinion, it had a substantial rental value.